IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**DALE Z. E.,**

         Plaintiff,

vs.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION**,

         Defendant.

Case No. 6:19-cv-00663-AA
**OPINION AND ORDER**

_____

AIKEN, District Judge:

    Plaintiff Dale Z. E.[1] seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("SSDIB"). This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons below, the Commissioner's decision is affirmed.

---

[1]    In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND

On January 5, 2015, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning on October 9, 2014. Tr. 15. In his initial disability report, Plaintiff cited the following limiting medical conditions: "Neck injury with spinal stenosis", "middle back injury", "lower back injury with spinal stenosis", "arthritis of the back", "nerve pain going down both arms with limited motion", "weakness and limited motion in the right leg", and "depression." Tr. 273.

The application was denied initially and upon reconsideration, and on Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on August 24, 2017. *Id.* On March 22, 2018, the ALJ issued a decision finding Plaintiff not disabled. Tr. 33. On March 8,2019, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. Having exhausted all administrative remedies, Plaintiff requested review by this Court.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which. . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). If the claimant is found not disabled at any step,

there is no need to continue to the process to subsequent steps. *See* 20 C.F.R. §§ 404.1520; 416.920.

> The five steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Keyser*, 648 F.3d at 724-25; *see also Bustamonte v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). The claimant bears the burden of proof at steps one through four, at which the burden shifts to the Commissioner at step five. *Bustamonte*, 262 F.3d at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamonte*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the five-step analysis, ultimately concluding that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 9, 2014. Tr. 17.

At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease, kidney disease, obesity, gout and anemia. Tr. 17. The ALJ found that because Plaintiff's depression causes no more than "mild" limitation in any of the functional areas, it is non-severe. Tr. 21.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment. *Id.* The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations: he can frequently stoop and crouch. Tr. 22.

At step four, the ALJ found Plaintiff was capable of performing his past relevant work as a molecular biologist and microbiologist. Tr. 31. Although the Plaintiff is capable of performing past relevant work, the ALJ continued to step five to find additional jobs that Plaintiff can perform. *Id.* At step five, the ALJ found that in light of Plaintiff's age, education, work experience and RFC, "there are other jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," including Biological Specimen Technician. Tr. 32. As a result, the ALJ found that Plaintiff was not disabled. Tr. 32-33.

## STANDARD OF REVIEW

An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); 42 U.S.C. §§ 405(g), 1383(c)(3).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Additionally, it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

The Court must uphold the Commissioner's decision if it is "supported by inferences reasonably drawn from the record," and when the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Stout,* 454 F.3d at 1054. Nor may the Court reverse an ALJ's decision based on harmless error. *Id.* at 1055-56.

## DISCUSSION

Plaintiff alleges the ALJ erred by (I) improperly rejecting Plaintiff's subjective symptom testimony; (II) improperly rejecting medical opinion from Dr. Faraji and Dr. Roost; (III) improperly assessing non-medical lay witness evidence; and (IV) failure to incorporate all medical evidence into Plaintiff's RFC causing

legal error. Without these errors, Plaintiff asserts that the ALJ would find him disabled.

## I.    Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by rejecting the Plaintiff's subjective testimony. Defendant responds that the ALJ reasonably discounted Plaintiff's testimony as it was inconsistent with Plaintiff's daily activities, presentation with the cooperative disability investigations unit ("CDIU"), and the objective medical record.

To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective evidence of any underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).

To find Plaintiff's subjective testimony unreliable, the ALJ is required to make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what

evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, unexplained failure to follow treatment, or a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 23. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle*, 533 F.3d at 1161.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 23.

The ALJ's conclusion is supported by substantial evidence. First, the ALJ noted inconsistencies between Plaintiff's allegations and the medical records. Tr. 23. "Contradiction with the medical record is a sufficient basis for rejecting the

claimant's subjective testimony." *Carmickle*, 533 F.3d at 1161. In Plaintiff's Activities of Daily Living ("ADL") Report, he claimed that he could not sit more than 10-15 minutes, stand more than 10 minutes, lift a gallon of milk, twist, or bend without pain. Tr. 293. Plaintiff testified during the ALJ hearing that he required the use of a cane for support as his right leg goes weak. Tr. 49. Plaintiff also testified that he has problems with his neck, spine, right arm, and shakiness that lead to reduced precision in his right hand. *Id.* Contrary to those claims, medical providers described Plaintiff as having a normal gait without the use of an assistive device on multiple occasions throughout the medical record. Tr. 2342, 2398, 2687, 2732-33, 2857, 2866, 3002. Additionally, examinations by two different doctors only noted an issue for Plaintiff when lifting anything over 20 or 30 pounds. Tr. 3616-25, 2394-95. The record also reflects Plaintiff's ability to grasp and manipulate items with his hands without evidence of diminutions. Tr. 2343.

Moreover, the ALJ noted inconsistencies in Plaintiff's testimony regarding his mental health status and the record. Tr. 23. During the hearing with the ALJ, Plaintiff reported that he "doesn't like being around people anymore," and that his memory and attention span have declined. Tr. 47. This statement contrasted with Plaintiff's own earlier statement that he does not have any problems getting along with family, friends, neighbors, or others. Tr. 298. Additionally, Plaintiff's attention, language, and memory were noted within normal limits several times throughout the record. Tr. 3608, 2807, 3589, 3644, 3656, 3770, 3914, 3916. The Court concludes that the ALJ reasonably considered these inconsistencies in assessing the Plaintiff's

subjective symptom testimony and that the ALJ's conclusions are supported by substantial evidence in the record.

The ALJ also reasoned that Plaintiff's testimony was inconsistent with his examinations and presentation at the CDIU investigation. Tr. 23. Plaintiff testified at the hearing, that he required the use of a cane for support. Tr. 49. However, during the CDIU investigation, the investigator noted that Plaintiff walked with no gait disturbance and without the use of any kind of assistive devices. Tr. 3913. Additionally, Plaintiff sat for the 40-minute interview without needing to adjust his position. Tr. 3913. At one point during the interview, Plaintiff bent over and picked up a small dog without any hesitation nor signs of discomfort. Tr. 3915. Plaintiff also testified that his memory was worsening. Tr. 48. The CDIU report notes that Plaintiff had "unremarkable recall" and was able to remember "previous addresses, acquaintances, their information, his prior employers, dates he worked at each job and significant things [that] occur[ed] [in] his past." Tr. 3914. The Court concludes that the ALJ reasonably considered these inconsistencies in assessing Plaintiff's subjective symptom testimony and that the ALJ's conclusions are supported by substantial evidence in the record.

Finally, the ALJ relied on conflict between Plaintiff's activities of daily living and his alleged limitations. Tr. 23. In Plaintiff's ADL Report, he answered that he could no longer lift, run, walk, and hunt due to his injuries. Tr. 294. During the hearing, Plaintiff testified that he could only go on short walks, no more than 200-300 yards, once or twice a week. Tr.54. But, the record indicates that Plaintiff

engaged in various physical activities including, hunting, fishing, and going to the gym four times a week for at least 30 minutes each session. Tr. 20, 25, 3760, 3775, 3780. Plaintiff also reported going on a hunting trip for four to five weeks with his brothers and friends in September of 2015. Tr. 2591. During the CDIU investigation, Plaintiff further remarked on this trip, saying that when not in the air-conditioned trailer, they were tracking and hunting for days on end. Tr. 3915. In August 2016 Plaintiff reported going camping at the coast and being active. Additionally, he further reported being more active around the house. Tr. 3688. The Court concludes that the ALJ reasonably considered Plaintiff's activities of daily living in assessing Plaintiff's credibility.

Given the evidence in the record as a whole, the ALJ's conclusion about the Plaintiff's alleged limitations represents a reasonable interpretation and is thus sufficient to support the ALJ's conclusion. For the above reasons, the Court concludes that the ALJ provided adequate support for discounting Plaintiff's subjective symptom testimony and the ALJ's conclusions are supported by substantial evidence in the record.

## II.   Medical Source Opinion

Plaintiff contends that the ALJ erred in weighing the opinions from Pari Faraji, M.D., and Noah Roost, Ph.D. Defendant responds that the ALJ did not err in providing specific and legitimate examples when weighing the opinions from Dr. Faraji and Dr. Roost.

The ALJ is responsible for resolving conflicts in the medical record. *Carmickle*, 533 F.3d at 1164 (9th Cir. 2008). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted.) An ALJ may reject the uncontradicted medical opinion of a treating of examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.* Additionally, an ALJ may reject medical source opinion evidence that is inconsistent with other medical opinions of record, or inconsistent with the objective medical evidence. *See Tommasetti,* 533 F. 3d at 1041. (ALJ did not err in rejecting medical opinion that conflicted with objective medical evidence and other medical opinion of record). Legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints. *Id.*

### A.    Pari Faraji, M.D.

The ALJ offered two reasons for rejecting Dr. Faraji's medical opinion of Plaintiff: (1) Dr. Faraji's assessment did not provide a function-by-function analysis of the Plaintiff's remaining abilities; and (2) Dr. Faraji's assessment of severe symptoms is inconsistent with the overall medical record. Tr. 28.

First, the ALJ gave Dr. Faraji's opinion "some weight" as his letter did not provide a function-by-function analysis. *Id.* An ALJ may reject an opinion that does not provide any specific functional limitations. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (explaining that a doctor's "mere statement that [claimant] experienced some diminution in her concentration skills" falls short of an opinion with specific findings and was therefore not useful in the disability determination). Here, Dr. Faraji's letter opinion vaguely concludes that Plaintiff's symptoms are still severe, and that his psychiatric illness adversely impacts his function. Tr. 3908. Dr. Faraji does not elaborate further nor specify Plaintiff's limitations. As such, Dr. Faraji's statement falls short of an informed opinion that Plaintiff's major depressive disorder would significantly interfere with his ability to work.

Second, the ALJ determined that Dr. Faraji's assessment of severe limitations is inconsistent with the overall medical evidence record. Tr. 28. A fair reading of the record reveals that Dr. Faraji's opinion is inconsistent with the brief, conclusory opinion of that state agency reviewing physician, who indicated that Plaintiff had only mild limitations in activities of daily living and no limitations in social functioning, concentration, persistence, and pace. Tr. 30. Thus, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Faraji's opinion. The ALJ gave Dr. Faraji's opinion "some weight" because it was inconsistent with the overall medical evidence record, including unremarkable mental health examinations, good symptom control with medication, inconsistencies between reported symptoms and Plaintiff's

presentation at the CDIU investigation, and Plaintiff's most recent treatment notes showing Plaintiff engaging in hunting fishing, and participating in competitions. Tr. 28.

Although the record reflects that Plaintiff experienced depression over the years, the ALJ found that the record is inconsistent with Dr. Faraji's assessment of Plaintiff's severe limitations.  The ALJ noted that despite Plaintiff's mental health diagnosis, medical providers observed Plaintiff as having an intact memory, Tr. 2807, 3589, 3644, 3656, 3770, 3914, 3916, generally intact attention, concentration, and focus, Tr. 3589, 3914, 3916, as generally pleasant and cooperative, Tr. 3985, 2915, 2957, 2961, 3589, 3913, and with no indications of problems getting along with others. Tr. 298, 3652. The ALJ also found it important, notwithstanding Dr. Faraji's opinion about Plaintiff's limitations due to his depression, Plaintiff is observed socializing more and engaging in his hobbies throughout the record. Tr. 28, 3611, 3652, 3663-64. Finally, the ALJ noted that throughout the record, Plaintiff's depression symptoms were strongly affected by extrinsic situational factors. Tr. 28, 3677-78, 3700-01, 3752, 3762. The ALJ relied on these factors in assessing Dr. Faraji's opinion that Plaintiff has severe symptoms which adversely affect his function.

At best, the doctors' notes throughout the record are inconclusive as to Plaintiff's limitations due to his depression. Where medical reports are inconclusive, the "[Commissioner] is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes v. Brown*, 881 F.2d 747, 750 (9th Cir.

1989). Consequently, when evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Andrews*, 53 F.3d at 1041.

As such, Dr. Faraji's sparse opinion regarding Plaintiff's limitations, plus its inconsistencies with the record, establish that the ALJ did not err in assessing Dr. Faraji's opinion.

### B. Noah Roost, Ph.D.

Plaintiff asserts that the ALJ erred in according "little weight" to Dr. Roost's one time examination in January 2017. Defendant responds that the ALJ reasonably discounted medical source opinion where they were inconsistent with the record.

As is the case with the opinion of a treating physician, the ALJ must provide "specific, legitimate reasons…supported by substantial record evidence" for discrediting an examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). Additionally, an ALJ may reject an examining, non-treating physician's opinion in favor of a non-examining non-treating physician when he gives, "specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts*, 66 F.3d at 184.

Here, the ALJ reasoned that Dr. Roost's opinion does not comport with the overall medical record. Tr. 28. These inconsistencies include lack of psychiatric hospitalization, unremarkable mental health examinations,  and indications of psychosocial stressors. Further, there is evidence of good symptom control and increased socialization and participation in hobbies. Tr. 28-29. These contradictory

opinions created inconclusiveness in determining Plaintiff's limitations, leaving the resolution of conflicts to the authority of the Commissioner. *Magallanes*, 881 F.2d at 750.

Additionally, where a physician's opinion of disability is premised largely upon the claimant's own accounts of his symptoms, limitations may be disregarded where those complaints have been properly discounted. *Morgan*, 169 F.3d at 602. In this case, Dr. Roost's report relies largely on claimant's own testimony of symptoms. Dr. Roost notes that Plaintiff reported the primary effects of his mental health symptoms as limiting his social relationships and impaired concentration. Tr. 3607. He also highlighted Plaintiff's own fear that his irritability would cause arguments with his supervisor. *Id*. Dr. Roost's conclusion is verbatim of the limitation statements made by the Plaintiff. Combined with the fact that Plaintiff's testimony was discounted above, it is fair for the ALJ to weigh Dr. Roost's opinion as such.

Accordingly, the ALJ's reasoning concerning Dr. Roost's opinion is supported by substantial evidence and is a reasonable interpretation of the record. And the ALJ did not err in ascribing "little weight" to Dr. Roost's opinion.

## III.    Lay Witness Evidence

Plaintiff contends that the ALJ improperly assessed testimony from Plaintiff's ex-wife, J.E., and his brother, S.E.  Defendant responds that the ALJ properly rejected the lay witness evidence for the same reasons it rejected the Plaintiff's subjective testimony.

Generally, lay witness testimony describing a plaintiff's symptoms is "competent evidence that the ALJ must take into account." *Molina*, 674 F.3d at 1114. The ALJ need only give germane reasons to discount the statements of a lay witness. *Id.*    When the ALJ fails to discuss his reasons for rejecting lay witness testimony, any such error is harmless when the lay witness alleged substantially the same limitations to those alleged by the plaintiff and the ALJ provided valid reasons to reject the plaintiff's testimony. *Molina*, 674 F.3d at 1122. An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, unexplained failure to follow treatment, or a plaintiff's daily activities. *Tommasetti*, 533 F.3d at 1039.

J.E. provided a third-party function report in February 2015. Tr. 30. She reiterated the limitations Plaintiff alleged in his initial claim. She stated that functionally, Plaintiff had difficulty with various activities including lifting, squatting, bending, standing, reaching, walking, kneeling, stair climbing and using his hands. Tr. 309-316. Specifically, she reported that Plaintiff can lift less than 10 pounds, cannot reach above shoulder level for one minute, and that his back hurts when he squats or bends. *Id.* J.E. also noted that while Plaintiff can prepare simple meals, drive, and grocery shop, he does not perform any house or yard work. *Id.*

S.E. also provided testimony regarding his brother's abilities in the form of an undated letter. S.E. testified that his brother's mobility has decreased to the point where he can only participate in hunting activities for short distances, and he

stopped playing sports. Tr. 357. He additionally noted that Plaintiff's attention span has decreased, and he will drop things more often and complains how unsteady he is. *Id.* Per S.E.'s letter, Plaintiff also seems more emotionally withdrawn, "not wanting to be around people" and often "forgetting things" as if he is preoccupied. *Id.*

The ALJ gave little weight to the lay witness statements as to Plaintiff's daily activities and alleged limitations and capabilities. Tr. 30.  The ALJ determined that the testimonies were "not consistent with the overall medical record," nor with the "Plaintiff's presentation to the CDIU investigator". Tr. 30-31. The ALJ pointed to more specific reasons for attributing little weight, such as treatment notes which showed "mostly no strength [deficits], [no] sensory or reflex deficits and a normal gait," "no surgical treatment undertaken for his spine or neck," "treatment notes demonstrating the claimant hunting, fishing, and going to the gym," and consultative examination and presentation inconsistencies where "no issues with pain, range of motion or gait were noted." *Id.*

The ALJ rested her decision on the inconsistencies between the Plaintiff's testimony and the medical evidence, which is an appropriate and germane reason to discount Plaintiff's testimony. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ also pointed to the similarities between Plaintiff's discredited testimony and the testimony of Plaintiff's brother and ex-wife. When lay witness testimony regurgitates the Plaintiff's discredited testimony, that is sufficient reasoning to discount lay testimony. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694

(9th Cir. 2009). The Court determines that the ALJ did not err in rejecting the lay witness testimony from Plaintiff's ex-wife and brother, where the ALJ reasoned that the lay witness testimony regurgitated Plaintiff's discredited testimony.

## IV.    Residual Functional Capacity Finding

Plaintiff contends that the ALJ erred by failing to incorporate medical findings into his residual functional capacity ("RFC"). Defendant responds that the ALJ did not err in incorporating the properly supported limitations into Plaintiff's RFC.

The RFC defines what a claimant can do in light of their limitations and includes all credited limitations that are supported by substantial evidence in the record. *See Bayliss*, 427 F.3d at 1217. But an ALJ's RFC assessment is proper when the ALJ considers those limitations for which he can find record support. *Id*. Where the ALJ credits the opinion of a physician, the ALJ must translate the claimant's condition as described in the physician's opinion into functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

Here, Plaintiff contends that the RFC fails to include all the functional limitations established by his medical record, Plaintiff's own testimony, and the lay witness testimony. However, as discussed above, the ALJ did not err in discounting that evidence, and therefore was not required to include the discounted limitations when addressing the RFC.

For example, the ALJ specifically discussed how the Plaintiff's alleged debilitations due to his depression were not supported by the objective medical

evidence where results from Plaintiff's medical evaluations were largely unremarkable, hospitalization was not required, and where Plaintiff experienced symptomatic exacerbations due to situational stressors, and thus were not accounted for in the RFC. Tr. 18-19. While the ALJ stated that the Plaintiff does suffer from the alleged impairments, the ALJ found that the record did not reflect the severity of the limitations as alleged by Plaintiff. Tr. 31. As such, the ALJ appropriately incorporated Plaintiff's supported limitations into the RFC, limiting him to light work with the ability to frequently stoop and crouch. Tr. 17-31. Additionally, the ALJ specifically excluded Plaintiff's unsupported alleged limitations because they premised on his discounted subjective limitations. Tr. 31.

Therefore, in this case, the RFC includes all limitations credited by the ALJ and sufficiently supported by substantial evidence within the record. *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015). Accordingly, the ALJ's reading of the record is a reasonable interpretation, and the ALJ did not err in reasonably assessing Plaintiff's residual functional capacity.

## CONCLUSION

The ALJ's findings, and the Commissioner's final decision regarding Plaintiff's disability status, are AFFIRMED.

IT IS SO ORDERED.

Dated this  28th  day of   February    2023.


_____ /s/Ann Aiken _____

Ann Aiken
United States District Judge